

**SIGNED this 28 day of April, 2009.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

In re

| | |
|---|---|
| J & B FAST FREIGHT, INC., | No.  05-54521 |
| | Chapter 7 |
| Debtor. | |

### M E M O R A N D U M

Appearances:

| | |
|---|---|
| Douglas L. Payne, Esq. | F.D. Gibson III, Esq. |
| 401 West Irish Street | 400 Ellis Avenue |
| Greeneville, Tennessee 37743 | Maryville, Tennessee 37804 |
| *Attorney for Chapter 7 Trustee* | *Attorney for Richard Gibson* |

**Marcia Phillips Parsons, United States Bankruptcy Judge**.  This bankruptcy case is before the court on the objections by the chapter 7 trustee to the two claims of Richard Gibson.  For the reasons discussed hereafter, the objections will be overruled and the claims allowed as administrative expenses under § 503(b)(1)(A) of the Bankruptcy Code.  This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

I.

On October 12, 2005, the debtor J & B Fast Freight, Inc. filed a voluntary petition for relief under chapter 11. A little more than a year later, on November 29, 2006, this court entered an order converting the debtor's case to chapter 7. Douglas L. Payne was duly appointed chapter 7 trustee. On November 30, 2006, the clerk of court sent a notice to all scheduled creditors, advising them of the conversion to chapter 7, the date set for the meeting of creditors, and the proof of claim deadline of April 3, 2007.

While in chapter 11, the debtor remained in possession and continued to operate its business of air freight pick-up and delivery. On December 9, 2005, Richard Gibson, an employee of the debtor, was injured on the job and filed a claim for workers compensation benefits. Although the record is not clear, it appears that the debtor initially had workers compensation insurance but at some point its coverage terminated. As a result, on October 27, 2006, Gibson filed suit against the debtor in the Bradley County, Tennessee Chancery Court for workers compensation benefits. Although a trial was scheduled in that proceeding, the state court subsequently stayed the action upon notification that the debtor's bankruptcy case had converted to chapter 7.

On December 18, 2007, Gibson filed two proofs of claim in the debtor's chapter 7 case. The first, claim no. 130, is for medical bills in the amount of $3,366 arising out of Gibson's injury. The second, claim no. 131 in the amount of $6,551, is for Mr. Gibson's wages while he was unable to work from December 9, 2005 through May 30, 2006. This claim appears to be calculated pursuant to Tennessee Code Annotated § 50-6-207(1), which provides for temporary total disability benefits to an injured employee equal to 66 2/3% of the employee's average weekly wages.

On October 21, 2008, the trustee filed objections to Gibson's two claims. After an initial hearing on the objections on November 25, 2008, the matter was continued at the parties' request to January 27, 2009. At that hearing, the parties stated that an evidentiary hearing was not necessary because the pertinent facts were not in dispute. Accordingly, as evidenced in a February 2, 2009 order, the court set deadlines for the filing of stipulations, a statement of issues, and memoranda of law. These documents have now been filed.

From the record that has been presented, there appears to be no dispute that Gibson is otherwise entitled to the payment of his medical bills and temporary total disability benefits as an injured employee under Tennessee's workers compensation law.  The trustee contends, however, that Gibson's claims should be disallowed because they were filed on December 18, 2007, after the bar date of April 3, 2007.  The parties also disagree as to whether the claims should be given priority or general unsecured status.[1]  Lastly, certain issues have been raised by the trustee concerning Gibson's state court workers compensation action.  According to the trustee, because service of process in the state court action failed without Gibson obtaining the issuance of new process within one year from the date of the failed service, the one-year statute of limitations for Gibson's workers compensation claim passed, thereby extinguishing his claim.  The trustee also notes that this court did not grant stay relief or leave for Gibson file the state court action, that Gibson did not sue the debtor as a debtor-in-possession or include the trustee in the action, and that the state court lacked jurisdiction over a claim against the debtor, citing the *Barton* doctrine, *see Barton v. Barbour*, 104 U.S. 126 (1881).

In response, Gibson asserts that because his claim arose postpetition, he was not listed as a creditor and given notice of the debtor's original filing, the conversion to chapter 7, or the proof of claim deadline.  As a creditor without notice, he asserts that he should be allowed to file a late proof of claim. With respect to the trustee's statute of limitations argument, Gibson contends that the statute of limitations issue became moot upon the conversion of the debtor's bankruptcy case to chapter 7.  Alternatively, Gibson denies that service in the state court action was faulty and, as proof of this contention, cites the fact that the state court set the case for trial.  Gibson also asserts that the trustee's argument regarding the automatic stay lacks validity because the stay is not applicable to postpetition litigation.  As to the failure to join the trustee in the state court action, Gibson observes that he could simply nonsuit that action and refile in state court, naming the trustee as a defendant,

---

[1] The proof of claim filed by Gibson for his medical bills was marked unsecured, while the proof of claim for wages was checked as priority. Gibson's reply to the trustee's objections states that both claims should be treated as priority claims, yet in his memorandum of law he concedes that the medical bills claim is an unsecured debt. Because the parties' joint statement of issues list as an issue the classification of claims, "secured, priority or general unsecured," the court concludes that the parties have submitted for resolution to the court the proper classification of both claims.

3

but maintains that this process would be useless since this court has exclusive jurisdiction over the debtor's property and claims against the estate.

II.

Turning first to the issue of whether Gibson's claims should be disallowed because they were not timely filed, 11 U.S.C. § 502(b)(9) provides that a claim should be allowed, unless "proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title . . . ." Under the version of paragraph (1) of § 726(a) that was in effect on the debtor's bankruptcy filing,[2] tardily filed priority claims are to be paid in the same priority as those that are timely filed as long as they are filed before the trustee commences distribution in the chapter 7 case. *See* 6 *Collier on Bankruptcy* ¶ 726.02[1] (15th ed. rev. 2008). There is no indication in the record that the trustee has commenced distribution in this case, either now or, more importantly, before the filing of Gibson's claims. Thus, to the extent that Gibson's claims are entitled to priority status, the mere untimeliness of the claims does not provide a basis for disallowance. *Id.* at ¶ 726.02[3] ("It is now clear that if a priority claim is tardily filed before the chapter 7 trustee begins distribution, it is given the same treatment as if it were timely filed.").

Under 11 U.S.C. § 507(a)(2), administrative expenses allowed under § 503(b) of the Bankruptcy Code are entitled to second priority in payment. Section 503(b)(1)(A) defines administrative claims to include "the actual, necessary costs and expenses of preserving the estate,

> including . . . wages, salaries, and commissions for services rendered after the commencement

---

[2] The statute then read as follows:
Except as provided in section 510 of this title, property of the estate shall be distributed–
> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section[.]

11 U.S.C. § 726(a)(1) (1994). Effective in cases commenced on or after October 17, 2005, § 726(a)(1) was amended "to change the deadline to require filing on or before the earlier of 10 days after the mailing of the summary of the trustee's final report to creditors or the date on which the trustee commences final distribution." 6 *Collier on Bankruptcy* ¶ 726.02[1] (15th ed. rev. 2008).

4

of the case. . . ." 11 U.S.C. § 503(b)(1)(A). In *Reading Co. v. Brown*, 391 U.S. 471 (1968), the Supreme Court held that "actual and necessary costs" should "include costs ordinarily incident to operation of a business, and [should] not be limited to costs without which rehabilitation would be impossible." *Id.* at 483. Citing the goal of "fairness to all persons having claims against an insolvent," the Court concluded that it was natural and just that those injured by the operation of the business during the bankruptcy should recover ahead of those for whose benefit the business was carried on. *Id.* at 477-483. Accordingly, the Court concluded that a fire damage tort claim, which resulted from the postpetition negligence of the receiver, was an administrative expense, even though payment of the claim provided no benefit to the bankruptcy estate. Based on the *Reading* decision, the Sixth Circuit Court of Appeals in *Wall Tube* held that response costs incurred by the State of Tennessee as a result of hazardous waste stored at the debtor's manufacturing site were entitled to administrative priority, noting that prior Supreme Court decisions "have created a special emphasis on the importance of complying with laws that protect the public health and safety." *In re Wall Tube & Metal Prods. Co.*, 831 F.2d 118, 128 (6th Cir. 1987). And, in *In re Sierra Pacific Broadcasters*, 185 B.R. 575, 579 (B.A.P. 9th Cir. 1995), the court concluded, based on *Reading* and its progeny, that the bankruptcy "estate is liable for any actual and necessary costs of administration arising from postpetition claims of workers compensation benefits arising from postpetition injuries."

This court is in agreement with the *Sierra Pacific Broadcasters* decision and concludes that Gibson's claims are entitled to administrative expense status. Under Tennessee law, an employer that fails to provide workers compensation benefits to its employees may be liable in tort. *Bussell v. Hill*, No. NJ-4385, 1994 WL 256385 (Tenn. June 10, 1994). Thus, Gibson's claims fall squarely within the *Reading* exception for tort claims involving public health and safety arising out of the operations of a bankruptcy debtor's business. Additionally, it has been held that, even without resort to the *Reading* exception, that medical expenses and temporary total disability benefits owing to an employee that was injured while employed by a chapter 11 debtor-in-possession without workers compensation insurance "can fairly and appropriately be deemed 'unsecured debt incurred in the ordinary course of business allowable under Section 503(b)(1) as an administrative expense . . . .'" *In re Pacesetter Designs, Inc.*, 114 B.R. 731, 734 (Bankr. D. Colo. 1990). Accordingly, Gibson's

5

claims are allowable as administrative expenses under § 503(b)(1)(A). As such, the trustee's objection based on the untimeliness of the claims must be overruled.

Before leaving this subject, the court notes that it does not appear from the record that Gibson was given the required notice in this case. Under Rule 1019(5)(A)(i) of the Federal Rules of Bankruptcy Procedure, upon the conversion of a chapter 11 case to chapter 7, the debtor in possession must file, not later than 15 days after conversion of the case, "a schedule of unpaid debts incurred after the filing of the petition and before conversion of the case, including the name and address of each claim holder." Moreover, pursuant to Rule 1019(6), upon the filing of the schedule of unpaid debts, the clerk is to "give notice to those to the entities listed on the schedule of the time for filing a request for payment of [preconversion] administrative expense" and the time for filing a claim of a kind specified in 11 U.S.C. § 348(d), which refers to postpetition, preconversion claims other than administrative expenses. In the present case, the debtor filed a schedule of unpaid debts on December 28, 2006. Inexplicably, the filed schedule did not list Richard Gibson. Also, inexplicably, the clerk failed to send the required notice of the bar date for filing claims and administrative expense requests to the new creditors listed on the schedule of unpaid debts.

In fact, it appears that not only have the new creditors not been added to the master address list in this case, but also no deadline for filing requests for payment of preconversion administrative expenses has ever been set, notwithstanding Rule 1019(6)'s directive. Thus, it is questionable whether Gibson's claims, to the extent that they constitute requests for payment of administrative expenses, are tardy, since no bar date was established. If Gibson's administrative expense claims are deemed tardy because they were not filed by the deadline for filing proofs of claim, the court finds that the absence of notice to Gibson constitutes cause for the untimely filing. *See* 11 U.S.C. § 503(a) ("An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.").[3]

---

[3] The court will enter an order in this case directing the clerk to add the creditors listed on the schedule of unpaid debts to the master address list and setting a deadline for these creditors to file a claim and/or request payment of preconversion administrative expenses.

III.

With respect to the trustee's arguments regarding deficiencies in Gibson's state court action, the court finds no merit.  As to the statute of limitations issue, Gibson had at least one year from the date of his injury on December 9, 2005, i.e., December 9, 2006, to commence a state court action for workers compensation benefits.  *See* Tenn. Code Ann. § 50-6-203(g).[4]  Yet before this date arrived, the debtor's bankruptcy case converted to chapter 7 on November 30, 2006.  Under § 108(c)of the Bankruptcy Code, any statute of limitations for bringing an action against the debtor is extended until 30 days after notice of the termination of the automatic stay.  11 U.S.C. §108(c); *Klingshirn v. United States (In re Klingshirn)*, 209 B.R. 698, 702 (B.A.P. 6th Cir. 1997) ("By its language, § 108(c) extends a statue of limitations that would expire while the automatic stay is in effect.").  Pursuant to 11 U.S.C. § 362(c), the automatic stay in a chapter 7 case of a non-individual debtor continues until the case is closed or dismissed, except as to the stay of an act against property of the estate which continues until such property is no longer property of the estate.  Thus, the automatic stay is still in effect in this case, and consequently, the statute of limitations on Gibson's workers compensation claims has not yet run.  Notwithstanding Gibson's initial pursuit of his claims against the debtor in state court, his actions therein had no impact on the running of the statute of limitations, which was preserved in bankruptcy by § 108(c).

As to the trustee's remaining comments about the state court action, it must be emphasized that unlike the decision of *Bellini Imports, Ltd. v. Mason & Dixon Lines Inc.*, 944 F.2d 199 (4th Cir. 1991), cited by the trustee in his memorandum of law, Gibson is not seeking to enforce a state court default judgment against the estate or trustee.  Accordingly, that case, and any alleged procedural

---

[4] Under this statute, the one-year period to file a workers compensation complaint runs from the latter of (1) the date of the accident resulting in injury or (2) the latter of the date of the last authorized treatment or the time the employer ceased voluntary payments to the injured employee. Tenn. Code Ann. § 50-5-203(g)(2).  One of the exhibits attached to Gibson's memorandum of law suggests that the debtor or the workers compensation insurance carrier may have made some initial payments to Gibson, thereby extending the commencement of this one-year limitations period.

errors by Gibson in the state court action, such as failing to effect proper service,[5] failing to sue the proper party, failing to obtain stay relief, and/or failing to obtain leave of this court to bring the suit, as well as the state court's lack of jurisdiction,[6] are irrelevant and provide no basis for opposing the substantive legitimacy of Gibson's claims in this court.

IV.

The court having determined that Gibson's claims are administrative expenses entitled to priority status, that the untimeliness of the claims does not provide a basis for their disallowance, and that the statute of limitations on the claims has not expired, an order will be entered overruling the chapter 7 trustee's objections.

---

[5] Regardless of whether service of the first complaint and summons upon an employee of the debtor was insufficient to effect service of process as the trustee charges, Gibson was undeniably prevented by the automatic stay from serving an alias summons and complaint once the debtor's bankruptcy case converted to chapter 7. *See, e.g., Smith v. GTE North Inc. (In re Smith)*, 170 B.R. 111, 116 (Bankr. N.D. Ohio 1994) (finding violation of automatic stay by creditor for disconnecting telephone service subsequent to chapter 7 conversion where charges were incurred during chapter 13); *In re Jones*, 369 B.R. 745, 751 (BAP 1st Cir. 2007) (agreeing that automatic stay would bar creditor from seeking to recover debt incurred in chapter 13 after conversion to chapter 7).

[6] In this regard, the trustee cites the *Barton* doctrine which requires leave of the appointing court to be obtained before a bankruptcy trustee may be used in another court. However, an exception to this doctrine is codified in 28 U.S.C. § 959, which provides in pertinent part that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." As to the necessity for seeking stay relief prior to commencement of the state court action, it has been held, although this court makes no ruling in this regard, that § 959 authorizes suit without the plaintiff first seeking relief from the automatic stay. *See, e.g. Minn. Pollution Control Agency v. Gouveia (In re Globe Bldg. Materials, Inc.)*, 345 B.R. 619, 637 (Bankr. N.D. Ind. 2006); *In re Kish*, 41 B.R. 620, 626 (Bankr. E.D. Mich. 1984).